Argued July 26, reversed and remanded for reinstatement of the
order of hearing officer August 25, petition for rehearing
denied September 14, petition for review denied
November 21, 1972

# WILLIAMSON, *Respondent, v.* STATE ACCIDENT INSURANCE FUND (No. 371-911), *Appellant.*

500 P2d 487

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Fred Allen,* Coos Bay, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

The Fund appeals from a judgment of the circuit court which reversed orders of the Workmen's Compensation Board and the hearing officer which denied a claim for a back injury. The circuit court allowed the claim.

■ Question was raised by the Fund whether claimant timely filed her claim. No serious contention has been made over this question and we think it is without merit, for any delay in filing has not prejudiced the Fund.

The substantive question on appeal is whether claimant carried her burden of proving that her injury

occurred in the course of employment. Incidental is a law question raised by claimant. She asserts that the state, upon her request, should have produced her doctor as a witness for her to cross-examine concerning hospital reports containing notes, some signed by him, which were received in evidence.

Claimant was employed by Fred Meyer Inc. at a job in which her duties involved taking bread from stacked trays upon which it was delivered and placing it in position for merchandizing. Evidence was that claimant ceased this work on May 15, 1970, at which time she obtained medical aid for a back ailment. The hospital records which were introduced in evidence contain entries, some or all of which were made by the attending doctor as follows:

May 15, 1970—"Pain in low back past 3 wks getting worse * * * no injury or other [last five words unintelligible]."

May 19, 1970—"Low back pain one week. Tho't she had kidney infection."

May 21, 1970—"Onset back pain 2 wk ago Cause? Spontaneous Work·Fred Meyer Bread girl. Off work since Friday."

May 30, 1970—"* * * [B]ack pain since early May. Getting worse past 2 wks * * *."

May 30, 1970—"* * * [B]ack pain since about March 7, 1970. The onset was spontaneously, she did not specifically injure her back. [The latter notation was dictated and typed whereas the preceding ones are in longhand.]"

July 1, 1970—"* * * The onset was in May and she was working at the time and she lifts all the time * * *."

July 31, 1970—"Persisting lumbo-sacral pain referred to both legs following lifting on the job."

The claim form which was filled out for the claimant and is dated July 28, 1970 states that the injury occurred on May 15, 1970 while the claimant was "[s]tocking bakery shelves. No one saw the injury or knew of it * * *." She was admitted to the hospital for treatment May 30, 1970.

At the time of her disability claimant was 45 years old. She testified that she is 5 feet 7 inches tall. The record fails to indicate her weight. She testified that the racks upon which the bread was stacked had been 10 or 11 high and that about the first part of May they were increased to 15 high. The bakery superintendent for the stores testified that if the claimant were lifting bread at once from racks stacked 11 to 15 high she would be making 54- and 64-pound lifts, depending on the size of the bread loaf, starting from a point six feet from the floor. She stood on the floor, so the physical fact is that it would be necessary for her to lift this weight on the top four racks enough to move it free from the 11th rack, move it sideways to clear the 11th rack, and then lower it to the floor. The Fund disputed claimant's assertion that the racks from which she worked were stacked higher than 11 high, but produced no witness who could categorically say this was so. The bread superintendent and another supervisor stated that they knew of no variation from the custom of stacking the bread 11 racks high except for an occasional stacking of 12 high. At the conclusion of the hearing, the hearing officer said:

"I counted in the evidence there in the medical records at least, five, if not six times, in which the doctor has commented that there was no injury that the pain was spontaneous or words to that effect. I can understand how you might not want to argue about this March date, I don't know that that is critical * * *.

"Of course, the apparent conflict bothers me. I can understand how a person could make a mistake, maybe once, or even twice, but it bothers me that we have a continuous repetition and I would like to hear your comments about it.

"* * * * * *

"* * * None of them [the other dates, all in May, mentioned by the hospital records] seem to tie into the March date at all, in the comments."

██ As previously noted the claimant has objected to consideration of the hospital records inasmuch as the doctor who prepared those records was not produced at claimant's request for cross-examination about the entries found therein. ORS 656.310(2) provides that:

"The contents of *medical, surgical and hospital reports* presented by claimants for compensation shall constitute prima facie evidence as to the matter contained therein; so, also, shall such reports presented by the State Accident Insurance Fund * * * provided that the doctor rendering *medical* and *surgical reports* consents to subject himself to cross-examination * * *." (Emphasis supplied.)

The plain meaning of this language is that a doctor may be cross-examined concerning his surgical and medical reports as a matter of right if they are to be received but this is not necessarily so with reference to hospital reports. We find nothing in the statutes or in the administrative orders cited by claimant which appears to vary the plain meaning (if that were possible to do legally) of this statute. *See* administrative order amending 5.05 A., B., C., D., and G. We agree with the statement in the findings of the Workmen's Compensation Board which says:

"* * * The witnesses were obtainable under

ordinary subpoena for ordinary fees regardless of which party produced them for the purpose at hand."

Claimant complains that she cannot afford the money for expert witness fees, and that the Fund should be charged therefor. If there is substance to such complaint, it should be directed to the legislature. We note that claimant's counsel, when he was objecting to the receipt of the reports unless he could cross-examine the doctor, said:

"* * * Well, actually the whole objection and the only one question that I would like to ask him [the doctor], is how did he get March 7 in this report, and I would like to have him tell how that got in there and to explain that because that appears to be in apparent conflict * * *."

We have quoted language from the hearing officer's colloquy with counsel after he had heard the evidence which indicates that he gave no weight to that part of the evidence where there was possible error in transcribing the doctor's dictation, that is, where the word "May" may have been transcribed as "March."

Whether the claim should be allowed turns principally upon the credibility to be accorded the claimant. The inconsistencies of her testimony at the hearing in contrast to what her doctor had recorded about her history of the onset of the disability cast her claim in doubt. The hearing officer saw and heard the witnesses.

■ The claimant was afforded opportunity by the law to bring the doctor for whatever examination she might have desired. We have reviewed the record de novo and we note the same inconsistencies which led to the hearing officer's conclusions. We have also noted

the improbability of the way claimant asserts she was injured. We agree with the hearing officer's assessment of the evidence.

Reversed and remanded for reinstatement of the order of the hearing officer.